# Matter of E-R-M- & L-R-M-, Respondents

*Decided June 3, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)    Section 235(b)(1)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(1)(A)(i) (2006), does not limit the prosecutorial discretion of the Department of Homeland Security to place arriving aliens in removal proceedings under section 240 of the Act, 8 U.S.C. § 1229a (2006).

(2)    The fact that an Immigration Judge has no jurisdiction over applications for adjustment of status under the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, as amended, does not negate his or her jurisdiction over the removal proceedings of arriving Cuban aliens under section 240 of the Act.

FOR RESPONDENT:  Won Kidane, Esquire, Seattle, Washington

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Joy A. Merriman, Assistant Chief Counsel

BEFORE:  Board Panel:  FILPPU, COLE, and PAULEY, Board Members.

PAULEY, Board Member:

In a decision dated December 11, 2009, an Immigration Judge terminated the removal proceedings against the respondents on jurisdictional grounds, concluding that arriving aliens who are inadmissible must be placed in expedited removal proceedings pursuant to section 235(b)(1)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(1)(A)(i) (2006).  The Department of Homeland Security ("DHS") has appealed from that decision, which was also certified to us by the Immigration Judge.  The DHS's appeal will be sustained, the proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

The DHS initiated removal proceedings under section 240 of the Act, 8 U.S.C. § 1229a (2006), by filing a Notice to Appear (Form I-862) with the Immigration Court.  The Notice to Appear alleged that the respondents, who are natives and citizens of Cuba, applied for admission to the United States as applicants for asylum at a land border crossing on or about October 29, 2008.  The DHS charged that the respondents are removable based

on their inadmissibility under section 212(a)(7)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (2006), as aliens without valid entry documents.

Section 235(b)(1)(A)(i) of the Act, which relates to expedited removal proceedings for arriving aliens, provides, in pertinent part, as follows:

> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States . . . is inadmissible under section 212(a)(6)(C) or 212(a)(7), the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 or a fear of persecution.

The Immigration Judge found that only aliens described in section 235(b)(1)(F) of the Act are exempt from expedited removal proceedings. That section provides that expedited removal "shall not apply to an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry." The Immigration Judge determined that the respondents, who are citizens of Cuba, did not fall into this exception because they arrived at a land border crossing. *See* 8 C.F.R. § 1235.3(b)(i) (2011).

On appeal, the DHS argues that the Immigration Judge erred in holding that he lacked jurisdiction over these section 240 removal proceedings. In their brief on appeal, the respondents agree with the DHS that it had discretion to place them in removal proceedings.[1] However, they claim that the Immigration Judge correctly found that he lacked jurisdiction over their case because they are prima facie eligible for adjustment of status under the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, as amended ("Cuban Adjustment Act"). We will first address the DHS's argument that the Immigration Judge had jurisdiction to adjudicate the respondents' case in removal proceedings and then turn to the respondents' argument regarding the Cuban Adjustment Act.[2]

The DHS argues that it is not required to process aliens described in section 235(b)(1)(A)(i) of the Act in section 235(b) expedited removal proceedings and that it has the discretion to place these aliens directly into section 240 removal proceedings. The DHS contends that the use of the word "shall" in section 235(b)(1)(A)(i) of the Act is properly interpreted to mean "may."

---

[1] The respondents are not prejudiced by their placement in section 240 removal proceedings and, in fact, have more rights available to them in proceedings under section 240 than in expedited removal proceedings, where aliens may only raise persecution-related relief.

[2] In *Matter of R-D-*, 24 I&N Dec. 221, 226 n.5 (BIA 2007), we decided not to address the issue in the case before us today, namely, whether certain aliens subject to expedited removal may also be placed in removal proceedings under section 240 of the Act.

However, the Immigration Judge determined that the word "shall" requires that the respondents be placed in expedited removal proceedings. We disagree.

We reach this conclusion for two reasons. First, we observe that the issue arises in the context of a purported restraint on the DHS's exercise of its prosecutorial discretion. In that context, we find that Congress' use of the term "shall" in section 235(b)(1)(A)(i) of the Act does not carry its ordinary meaning, namely, that an act is mandatory. It is common for the term "shall" to mean "may" when it relates to decisions made by the Executive Branch of the Government on whether to charge an individual and on what charge or charges to bring. For example, in the Federal criminal code, Congress has defined most crimes by providing that whoever engages in certain conduct "shall" be imprisoned or otherwise punished. But this has never been construed to require a Federal prosecutor to bring charges against every person believed to have violated the statute, or to mandate that where, as here, when multiple charges are possible, one or the other or all must be pursued.

To the contrary, the Supreme Court has found that the decision whether to charge an individual with a crime is one reserved almost exclusively to the Executive Branch. *See generally United States v. Armstrong*, 517 U.S. 456, 464 (1996) (observing that the Attorney General and United States Attorneys retain broad discretion to enforce the country's criminal laws and that they "have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed'" (quoting U.S. Const. art. II, § 3)); *United States v. Nixon*, 418 U.S. 683, 693 (1974) (stating that the "Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case").

By way of illustration, in *United States v. Batchelder*, 442 U.S. 114, 118 (1979), the Court considered a case involving two statutes, 18 U.S.C. §§ 922(h) and 1202(a), which proscribed similar conduct involving a convicted felon's receipt of a firearm that has been in interstate commerce, but which carried different penalties. The Court found that the prosecutor could choose under which statute to charge the defendant and that the applicable penalty under each was a valid consideration.

Like section 235(b)(1)(A)(i) of the Act, the statutes at issue in *Batchelder* used the word "shall." The Court observed that it had "long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *Id.* at 123-24. The Court further observed that "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *Id.* at 124; *see also United States v. Armstrong*, 517 U.S. at 464 ("In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and

what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978))); *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part and dissenting in part) (observing that it is "not unusual for a particular act to violate more than one criminal statute, and in such situations the Government may proceed under any statute that applies") (citations omitted).[3]

Applying the above general principles, we find no reason to suppose that the broad discretion given to the Executive Branch regarding charging decisions in the criminal context does not also apply to charging decisions by the Executive Branch, that is, the DHS, in the immigration context.

Second, we find that the statutory scheme itself supports our reading that the DHS has discretion to put aliens in section 240 removal proceedings even though they may also be subject to expedited removal under section 235(b)(1)(A)(i) of the Act. Section 235(b)(2)(A) of the Act provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."[4] Thus, aliens who are in the broad category of applicants for admission, which includes, inter alia, any alien present in the United States who has not been admitted, are entitled to section 240 removal proceedings. *See* section 235(a)(1) of the Act.

However, section 235(b)(2)(B) of the Act, titled "Exception," states that section 235(b)(2)(A) "shall not apply" to crewmen, stowaways, or aliens "to whom paragraph (1) applies," namely, arriving aliens, such as the respondents in this case. We read this exception in section 235(b)(2)(B) as meaning that these three classes of aliens, including those subject to expedited removal under section 235(b)(1)(A)(i), are not *entitled* to a section 240 proceeding, *not* that these classes of aliens may not be placed in such proceedings. This reading is confirmed by the fact that section 235(a)(2) prohibits stowaways, but not the other two classes of aliens excepted under section 235(a)(2)(B), from being placed in section 240 proceedings. *See* section 235(a)(2) of the Act ("In no case may a stowaway be considered

---

[3] The only area in which judicial review of a prosecutorial decision is permitted is where an allegation is made that a charging decision was based on constitutionally prohibited reasons, such as race or religion. *See United States v. Batchelder*, 442 U.S. at 125 ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints."); *see also id.* at 125 n.9 ("The Equal Protection Clause prohibits selective enforcement 'based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" (quoting *Olyer v. Boles*, 368 U.S. 448, 456 (1962))).

[4] Under section 235(a)(1) of the Act, arriving aliens are "deemed" to be applicants for admission.

an applicant for admission or eligible for a hearing under section 240."). The lack of a similar bar for the other two categories of aliens listed in the exception to section 235(b)(2)(A), including aliens like the respondents who are subject to section 235(b)(1)(A)(i) of the Act, supports our interpretation that these two categories of aliens may nevertheless be placed in section 240 proceedings at the election of the DHS.

Accordingly, based on the prosecutorial discretion given to the DHS and the above-cited provisions in the Act, we find that it was permissible for the DHS to file a Notice to Appear commencing section 240 removal proceedings against the respondents and that the Immigration Judge has jurisdiction over them.[5]

We now turn to the respondents' argument that the Immigration Judge has no jurisdiction over their case because they are prima facie eligible for adjustment under the Cuban Adjustment Act. In *Matter of Martinez-Montalvo*, 24 I&N Dec. 778 (BIA 2009), we held that Immigration Judges lack jurisdiction under 8 C.F.R. §§ 245.2(a)(1) and 1245.2(a)(1)(ii) (2008) to adjudicate an application filed by an arriving alien seeking adjustment of status under the Cuban Adjustment Act, with the limited exception of an alien who has been placed in removal proceedings after returning to the United States pursuant to a grant of advance parole to pursue a previously filed application. This narrow exception does not apply to the respondents' case. Although we agree with the respondents that the Immigration Judge has no jurisdiction over applications for adjustment of status under the Cuban Adjustment Act, the lack of jurisdiction over this potential avenue of relief does not negate his jurisdiction over their removal proceedings under section 240 of the Act.

Based on the foregoing, we will sustain the DHS's appeal and vacate the Immigration Judge's ruling that he lacked jurisdiction over the respondents' case. Accordingly, section 240 removal proceedings will be reinstated and the Immigration Judge will determine whether the respondents are removable as charged and, if they are removable, give them an opportunity to pursue any other relief from removal for which they may be eligible. We recognize that the Immigration Judge has no jurisdiction over applications for adjustment

---

[5] *Matter of Kanagasundram*, 22 I&N Dec. 963 (BIA 1999), is not to the contrary. In that case, we found that an alien who sought admission under the Visa Waiver Pilot Program could not be placed in expedited removal proceedings and, pursuant to the regulations, must be issued a Notice of Referral to Immigration Judge (Form I-863). In so holding, we relied on 8 C.F.R. § 217.4 (1999), which explicitly states that an alien who presents himself as an applicant for admission under section 217 of the Act "must" be issued a Form I-863 for proceedings to adjudicate asylum applications. *Matter of Kanagasundram*, 22 I&N Dec. at 965. No comparable regulation exists in the case of aliens described in section 235(b)(1)(A).

of status under the Cuban Adjustment Act.  The respondents may therefore elect to file such applications with the United States Citizenship and Immigration Services.

**ORDER:**  The appeal of Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings against the respondents are reinstated.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.