# Matter of Jonathan Said HERRERA-VASQUEZ, Respondent

*Decided May 8, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The absence of a checked alien classification box on a Notice to Appear (Form I-862) does not, by itself, render the notice to appear fatally deficient or otherwise preclude an Immigration Judge from exercising jurisdiction over removal proceedings, and it is therefore not a basis to terminate the proceedings of an alien who has been returned to Mexico under the Migrant Protection Protocols. *Matter of J.J. Rodriguez*, 27 I&N Dec. 762 (BIA 2020), followed.

FOR RESPONDENT: Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY: Meggan G. Johnson, Associate Legal Advisor

BEFORE: Board Panel: MANN, Board Member; MORRIS, Temporary Board Member; Concurring Opinion: KELLY, Board Member.

MANN, Board Member:

In a decision dated May 30, 2019, an Immigration Judge terminated these removal proceedings on the basis that the Notice to Appear (Form I-862) served on the respondent was defective. The Department of Homeland Security ("DHS") has appealed from that decision. We requested and received supplemental briefs from the DHS and amici curiae.[1] There has been no response to our request or the DHS's appeal from the respondent. The appeal will be sustained, the proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

According to the respondent's Record of Deportable/Inadmissible Alien (Form I-213), a United States Border Patrol agent encountered and arrested him at 2:40 a.m. on April 1, 2019, in San Ysidro, California, at a location approximately a quarter mile north of the United States border with Mexico. The respondent was transported to the Imperial Beach Border Patrol Station where he "admitted to be a citizen and national of Honduras without the

---

[1] We acknowledge with appreciation the briefs submitted by the DHS and amici.

necessary legal documents to enter, pass through, or remain in the United States." He "also admitted to illegally crossing the United States/Mexico international boundary on or about April 1, 2019, without being inspected by an Immigration Officer at a designated Port of Entry." The respondent conceded that he was a member of a migrant "caravan."

On April 3, 2019, the DHS personally served the respondent with a notice to appear that bears the heading, "In removal proceedings under section 240 of the Immigration and Nationality Act." On the first page of the notice to appear, the DHS alleges that the respondent is not a citizen or national of the United States; that he is a native and citizen of Honduras; that he arrived in the United States at or near San Ysidro, California, on or about April 1, 2019; that he was not then admitted or paroled after inspection by an immigration officer; and that he is an immigrant not in possession of a valid unexpired visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.

The next section of the notice to appear states, "On the basis of the foregoing, it is charged that you are subject to removal from the United States" under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (2018), as an alien who, at the time of application for admission, did not possess a valid entry document. The notice to appear contains the respondent's signature, acknowledging that the DHS personally served it on him. It informed him that his removal hearing would be held on May 30, 2019, at 12:30 p.m. in the San Diego Immigration Court and listed his address as a "Domicilio Conocido" ("Known Domicile") in Tijuana, Baja California, Mexico. However, the DHS did not check any of the three alien classification boxes on the notice to appear to indicate whether he was alleged to be (1) an arriving alien, (2) an alien present in the United States who has not been admitted or paroled, or (3) an alien who has been admitted to the United States but is removable for reasons stated elsewhere on the notice to appear.

The DHS also provided the respondent with a document entitled "Migrant Protection Protocols Initial Processing Information" ("MPP Sheet"). The MPP Sheet, which is written in the English language and translated into Spanish, instructed him to arrive at a specific location at the San Ysidro port of entry at 9:00 a.m. on May 30, 2019, so that he could be transported to the San Diego Immigration Court for his hearing. Following the service of the notice to appear and MPP Sheet, the respondent was returned to Mexico to await removal proceedings pursuant to section 235(b)(2)(C) of the Act, 8 U.S.C. § 1225(b)(2)(C) (2018).

The respondent did not appear at the Immigration Court on May 30, 2019. During the hearing, the DHS requested that the Immigration Judge order the respondent removed from the United States in absentia pursuant to section

240(b)(5)(A) of the Act, 8 U.S.C. § 1229a(b)(5)(A) (2018). Instead, the Immigration Judge terminated the proceedings.

## II.  ANALYSIS

### A.  Notice of the Hearing

In his decision, the Immigration Judge expressed a concern that the respondent was not given proper notice of how to attend his hearing. Subsequently, we issued *Matter of J.J. Rodriguez*, 27 I&N Dec. 762 (BIA 2020), holding that where, as here, the DHS returns an alien to Mexico to await a removal hearing pursuant to the Migrant Protection Protocols and provides the alien with sufficient notice of that hearing, an Immigration Judge should enter an in absentia order of removal if the respondent fails to appear and is removable. The record indicates that the respondent received sufficient notice of the hearing pursuant to *Matter of J.J. Rodriguez*. There is no indication in the record that he did not understand the instructions for appearing at the hearing or that he made any attempt to appear.

Moreover, according to the Form I-213, the respondent understood that he would be returned to Mexico and should not attempt to enter the United States "until he returns to the appropriate port of entry on the date of his hearing before an immigration judge." *See Matter of Gomez-Gomez*, 23 I&N Dec. 522, 524 (BIA 2002) (stating that a Form I-213 is presumptively trustworthy). The Immigration Judge also acknowledged that many other aliens who were returned to Mexico under the Migrant Protection Protocols attended their hearings that day. We conclude that termination of the respondent's removal proceedings on the basis that he did not receive adequate notice of his removal hearing is foreclosed by our decision in *Matter of J.J. Rodriguez*.

### B.  Sufficiency of the Notice To Appear

However, this case differs from *Matter of J.J. Rodriguez* in several respects. First, unlike the respondent, who was alleged to have arrived in the United States without presenting himself at a port of entry, the alien in that case applied for admission at a designated port of arrival. *Matter of J.J. Rodriguez*, 27 I&N Dec. at 762. Second, the respondent's notice to appear did not indicate, by a checked alien classification box, whether he was alleged to be an arriving alien, an alien present in the United States but not admitted or paroled, or one who has been admitted but is removable. Third, in *Matter of J.J. Rodriguez*, we did not address whether the notice to appear provided sufficient information to establish notice of the type of proceedings

being initiated and the proper grounds for removability. In light of these distinctions, we requested and received supplemental briefing from the DHS and amici curiae regarding (1) whether, under the Migrant Protection Protocols program, the DHS may return an alien to a contiguous territory pending removal proceedings if the notice to appear does not allege that the person is an arriving alien or entered the United States via a port of entry or by interdiction and (2) whether the DHS has statutory authority to apply the Migrant Protection Protocols program to aliens who did not present themselves for inspection at a port of entry.

The notice to appear is the charging document that commences removal proceedings under section 240 of the Act. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 449 (Jan. 3, 1997) (Supplementary Information). Historically, the DHS has used a version of the notice to appear that contains three possible allegations referring to the circumstances of an alien's arrival or presence in the United States.[2]

The statute and the regulations set forth the requirements for a notice to appear, which include:

(A) The nature of the proceedings against the alien.
(B) The legal authority under which the proceedings are conducted.
(C) The acts or conduct alleged to be in violation of law.
(D) The charges against the alien and the statutory provisions alleged to have been violated.

Section 239(a)(1)(A)–(D) of the Act, 8 U.S.C. § 1229(a)(1)(A)–(D) (2018); *see also* 8 C.F.R. § 1003.15(b)(1)–(4) (2020).

Amici argue that absent a checked box designation, a notice to appear fails to meet the statutory and regulatory requirement to advise the respondent of the nature of the proceedings. However, neither section 239(a)(1)(A) of the Act nor the regulation at 8 C.F.R. § 1003.15(b)(1) explicitly requires that the DHS check one of the three alien classification boxes on the notice to appear, so long as the required information is provided. Had Congress wanted the DHS to place an alien on notice of the applicable designation, it could have included such a requirement in section 239(a)(1)

---

[2]  The version of the notice to appear in this case, which was revised on August 1, 2007, includes the following alien classification checkboxes:

  ☐ 1.  You are an arriving alien.
  ☐ 2.  You are an alien present in the United States who has not been admitted or paroled.
  ☐ 3.  You have been admitted to the United States, but are removable for the reasons stated below.

of the Act. *Cf. Kucana v. Holder*, 558 U.S. 233, 248 (2010) (stating that if Congress wanted to preclude judicial review over decisions not specified as discretionary by statute, it could have done so).

In this regard, we have previously held that an Order to Show Cause (Form I-221) issued pursuant to the former regulations at 8 C.F.R. § 242.1 (1975) provided adequate information because it was "sufficiently explicit to inform the alien . . . what actions were in violation of the law, and what law he violated, so as to enable him to mount a defense." *Matter of Chery and Hasan*, 15 I&N Dec. 380, 381 (BIA 1975);[3] *see also Matter of Raqueno*, 17 I&N Dec. 10, 12–13 (BIA 1979) ("An Order to Show Cause is designed to inform an alien of the charges against [him] with sufficient precision to allow [him] to properly defend [himself]." (citing *Matter of Chery and Hasan*, 15 I&N Dec. 380)); *Matter of Ho*, 12 I&N Dec. 516, 517–18 (BIA 1967), *aff'd sub nom.*, *Ho Yeh Sze v. INS*, 389 F.2d 978, 981 (2d Cir. 1968). This standard is instructive in interpreting our current regulations at 8 C.F.R. § 1003.15(b)(1)–(4), whose provisions are substantively similar to the former regulations.

Overall, our review of the respondent's notice to appear satisfies us that it sufficiently enabled him to mount a defense to the inadmissibility charge against him. The notice to appear placed the respondent on notice of the nature of the proceedings, advising him that he was being placed "[i]n removal proceedings under section 240 of the Immigration and Nationality Act," as opposed to some other immigration proceeding, such as expedited removal, or any other form of criminal, civil, or administrative proceedings. *See Nature*, *Black's Law Dictionary* (11th ed. 2019) (defining "nature" as "[a] fundamental quality that distinguishes one thing from another; the essence of something").

Among other things, the respondent's notice to appear described his right to be represented, the conduct of the hearing, and the consequences of failing to appear.[4] Specifically, the notice to appear directed the respondent, "[Y]ou

---

3    At the time of our decision in *Matter of Chery and Hasan*, 15 I&N Dec. at 380–81, the regulations at 8 C.F.R. § 242.1(b) required a statement of the nature of the proceedings, the legal authority under which they were conducted, the factual allegations, the charges against the alien, and the statutory provisions alleged to have been violated. *See* Immigration and Naturalization Service, Department of Justice, 22 Fed. Reg. 9765, 9796 (Dec. 6, 1957).

4    The notice to appear placed the respondent on notice that he could be represented at the hearing, and he was given a current list of attorneys and organizations that provide free legal services and allowed a period of time to secure counsel. *See* section 239(a)(1)(E) of the Act; 8 C.F.R. § 1003.15(b)(5). It also warned the respondent of the requirements that he must "immediately provide (or have provided)" the DHS and the Immigration Court "with a written record of an address and telephone number (if any) at which [he] may be

are ordered to appear before an immigration judge . . . to show why you should not be removed from the United States." It set forth the factual allegations against him, namely, that he recently arrived in the United States, was not inspected or admitted by an immigration officer, and lacked valid documentation to enter the country. It also stated the charge against the respondent, specifying that he was inadmissible under section 212(a)(7)(A)(i)(I) of the Act because he did not possess valid entry documents. We conclude that this notice to appear placed the respondent on notice of all the information required by sections 239(a)(1)(A)–(D) of the Act and 8 C.F.R. § 1003.15(b)(1)–(4).

We have also considered amici's concerns regarding the potential consequences of a notice to appear that has no checked box. For example, amici suggest that if no box is checked, an Immigration Judge may not have jurisdiction to adjudicate a potential application for adjustment of status, because 8 C.F.R. § 1245.2(a)(1)(ii) (2020) generally divests Immigration Judges from considering such an application filed by an arriving alien. However, such a concern is speculative at this point. There is no indication that the respondent is the beneficiary of an approved (or even pending) immigrant visa petition.

Moreover, in requiring that a notice to appear advise the respondent of the "nature of the proceedings against" him, neither section 239(a)(1)(A) of the Act nor 8 C.F.R. § 1003.15(b)(1) mandates that a notice to appear set forth an alien's eligibility for every form of relief from removal for which he might be eligible. *See Matter of Raqueno*, 17 I&N Dec. at 13 ("There is no need, under the law or the regulations, for allegations in an Order to Show Cause of elements [that are] unnecessary to the charge as that charge is defined in the statute."). Once an alien appears, it is the duty of the Immigration Judge, not the DHS, to advise the alien of any apparent eligibility to apply for relief from removal. 8 C.F.R. § 1240.11(a)(2) (2020).

For the reasons stated above, we conclude that the respondent's notice to appear was proper and met the requirements of section 239(a)(1) of the Act and 8 C.F.R. § 1003.15(b). It contained the nature of the proceedings against the respondent, the legal authority under which the proceedings would be conducted, his acts or conduct alleged to be in violation of law, and the statutory provisions that he is charged with violating. Moreover, it advised him that he may be represented by counsel and warned him that he was

---

contacted" and "with a written record of any change of [his] address or telephone number," as well as the consequences under section 240(b)(5) of the Act of "failure to provide address and telephone information." Sections 239(a)(1)(F)(i)–(iii) of the Act. Finally, the notice to appear contained the time and place at which the removal hearing would be held and the consequences under section 240(b)(5) of "the failure, except under exceptional circumstances, to appear." Sections 239(a)(1)(G)(i)–(ii) of the Act.

required to provide the DHS and the Immigration Court of his address. The notice to appear contained the time and place at which the removal hearing would be held and the consequences of his failure to appear. Finally, it complied with the statutory and regulatory requirements identified in *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019), and *Matter of Bermudez-Cota*, 27 I&N Dec. 441, 447 (BIA 2018).

"It is well settled that an Immigration Judge may only 'terminate removal proceedings under [specific] circumstances identified in the regulations' and where 'the charges of removability against a respondent have not been sustained.'" *Matter of J.J. Rodriguez*, 27 I&N Dec. at 763 (quoting *Matter of S-O-G- & F-D-B-*, 27 I&N Dec. 462, 468 (A.G. 2018) (alteration in original)). An Immigration Judge is not authorized to terminate proceedings because a notice to appear has no alien classification box checked when the Act and its implementing regulations do not require one. *See United States v. Garza-Sanchez*, 217 F.3d 806, 810 (9th Cir. 2000) ("We may not read into [a] regulation a requirement that it does not impose by its precise terms."). Accordingly, we conclude that the record does not support the Immigration Judge's sua sponte termination of the proceedings on the basis that the notice to appear did not sufficiently put the respondent on notice of the nature of the proceedings against him.[5]

## C. Burden of Proof

The Immigration Judge also terminated proceedings upon his finding that the charge of removability did not sufficiently place the respondent on notice of the burden of proof.[6] We disagree. Sections 240(c)(2) and (3) of the Act

---

[5]   As we have recently held, the rules regarding the initiation of proceedings in 8 C.F.R. § 1003.14 (2020) and related regulations are "claims-processing rules," which do not implicate the subject matter jurisdiction of the Immigration Court, but which may be challenged in a timely manner. *Matter of Rosales Vargas and Rosales Rosales*, 27 I&N Dec. 745, 751–53 (BIA 2020). Since the respondent did not appear at his hearing, he did not challenge any deficiencies in the notice to appear. Accordingly, there is no claim of prejudice to the respondent, so termination is inappropriate for this reason as well. *See id.* at 753–54. Even if the respondent had challenged any deficiencies in the notice to appear, jurisdiction over the case was established because the notice to appear satisfies the regulatory requirements of 8 C.F.R. § 1003.15. *See Karingithi v. Whitaker*, 913 F.3d at 1160 (holding that a notice to appear that met the regulatory requirements vested jurisdiction in the Immigration Judge).

[6]   The Immigration Judge questioned the fact that the notice to appear alleged both that the respondent was not admitted or paroled after inspection by an immigration officer and that he was an immigrant not in possession of valid documentation. However, the DHS charged the respondent with having no valid entry documents under section 212(a)(7) of the Act, but not under section 212(a)(6). No argument has been made that the DHS could

set forth the applicable burdens of proof on each party depending on whether the respondent is an applicant for admission or was previously admitted but is subject to removal.

In the case of an applicant for admission, the alien is charged as inadmissible under section 212(a) of the Act. The alien bears the burden of establishing either under section 240(c)(2)(A) that he is "clearly and beyond doubt entitled to be admitted" or under section 240(c)(2)(B) "by clear and convincing evidence, that [he] is lawfully present in the United States pursuant to a prior admission." In the case of an alien who has been admitted to the United States, the charge will fall under section 237(a) of the Act, and the DHS will bear the burden of establishing "by clear and convincing evidence that . . . the alien is deportable." Section 240(c)(3)(A) of the Act.

The required contents of the respondent's notice to appear, namely, the allegations and the charge, make clear that he is charged with being inadmissible under section 212(a) of the Act. As an applicant for admission, therefore, he bears the burden of proof as a matter of law.[7] Section 240(c)(2) of the Act.

---

not, in its discretion, charge an alien with either or both of these violations of the Act, which are not inconsistent or mutually exclusive. *Cf. Matter of E-R-M & L-R-M-*, 25 I&N Dec. 520, 523 (BIA 2011) (holding that "the DHS has discretion to put aliens in section 240 removal proceedings even though they may also be subject to expedited removal under section 235(b)(1)(A)(i) of the Act" because "the broad discretion given to the Executive Branch regarding charging decisions in the criminal context . . . also appl[ies] to charging decisions by the Executive Branch, that is, the DHS, in the immigration context").

[7] Regarding the checkboxes on the notice to appear, both the first box (arriving alien) and the second box (alien present in the United States who has not been admitted or paroled) apply to applicants for admission. In either case, the charge of removability would fall under section 212(a) of the Act and the alien would bear the burden of proof under section 240(c)(2).

Amici argue that there is a significant difference under the regulations regarding the burden of proof between an arriving alien and an alien present without being admitted. As applied to the facts of this case, we disagree. Both categories are indisputably applicants for admission. As the DHS argues, the checkboxes, at most, subdivide applicants for admission into two categories—arriving aliens and other applicants for admission. That information does not alter the facts that the notice to appear plainly placed the respondent in removal proceedings and that he is an applicant for admission.

Under 8 C.F.R. § 1240.8(c) (2020), where the DHS alleges that an alien is present without being admitted or paroled, it bears the initial burden of establishing alienage. If the DHS proves alienage, the burden shifts to the alien to show by clear and convincing evidence that he is lawfully in the United States pursuant to a prior admission. *Id.* However, we need not now resolve whether an indication of this difference in the initial burden of proof must be included in the notice to appear under the statute or the regulations. Since the respondent did not appear for the hearing, the applicable burden of proof on the DHS in presenting its motion for an in absentia removal order is "clear, unequivocal, and convincing evidence" under section 240(b)(5)(A) of the Act.

Section 235(a)(1) of the Act provides that an "alien present in the United States who has not been admitted or who arrives in the United States," whether or not at a designated port of arrival, is deemed to be an applicant for admission. In turn, an alien who has not demonstrated that he is within any of the nonimmigrant classes specified in section 101(a)(15) of the Act, 8 U.S.C. § 1101(a)(15) (2018), is deemed to be an "immigrant." *Cf. Matter of Healy and Goodchild*, 17 I&N Dec. 22, 26 (BIA 1979) (holding that where an alien has not established his entitlement to status as a nonimmigrant under any of the classifications in section 101(a)(15) of the Act, he is properly excludable as an immigrant without the requisite travel or entry documents). While the exact reasons for the respondent's application for admission into this country are not identified in the Form I-213, there is no indication that he is seeking admission as a nonimmigrant, such as a tourist, student, or temporary worker. Moreover, applicants for admission bear the burden to establish that they are clearly and beyond doubt entitled to be admitted to the United States and are not inadmissible. Section 240(c)(2)(A) of the Act; 8 C.F.R. § 1240.8(c) (2020).

The fact that no box is checked on the notice to appear does not prevent the Immigration Judge from evaluating the allegations of fact against the respondent and any evidence presented by the DHS. The Form I-213 alone may be sufficient to support a conclusion that the respondent is inadmissible under section 212(a)(7)(A)(i)(I) of the Act, and is therefore subject to removal, because he is an immigrant who, at the time of his application for admission, was not in possession of a valid entry document. *See Matter of Gomez-Gomez*, 23 I&N Dec. at 524 (stating that absent evidence that information on a Form I-213 is inaccurate or obtained by coercion, the document is inherently trustworthy and admissible to prove alienage or deportability). Accordingly, since the respondent has not appeared, the DHS has potentially proffered clear, unequivocal, and convincing evidence that he is subject to removal from the United States as charged in the notice to appear. Section 240(b)(5)(A) of the Act; 8 C.F.R. § 1240.8(c).

We disagree with amici's contention that "[i]f [the] DHS does not give notice of which admission status [the] DHS believes a respondent to hold, even the most experienced immigration attorney will be at a loss to fully advise a client as to the nature of the removal proceeding and their rights in that proceeding based on the [notice to appear]." Amici assert that the aliens who have been returned to Mexico under the Migrant Protection Protocols are "asylum seekers." Regardless of whether the notice to appear contains a checked box, an alien seeking asylum is required to appear at his scheduled removal hearings and file an Application for Asylum and for Withholding of Removal (Form I-589). *See* 8 C.F.R. § 1208.3(a) (2020). An attorney will be able to advise an alien that, in order to apply for asylum, he will need to

appear at his removal hearings and file a Form I-589.  In every proceeding, the burden of establishing eligibility for asylum rests on the applicant. Section 240(c)(4)(A) of the Act; 8 C.F.R. §§ 1208.13(a), 1240.8(d) (2020). As explained in the MPP Sheet, the respondent was informed to attend his removal hearing at the Immigration Court in San Diego, California, by presenting himself at the port of entry in San Ysidro, California, on the morning of May 30, 2019.  Had he appeared at the hearing, he could have submitted a Form I-589.[8]

The DHS may opt to provide more information in a notice to appear than the law requires, or it may duplicate required information.[9]  Ultimately, however, we know of no statutory or regulatory requirement that the DHS do either, and the respondent and amici have identified none.

### D.  Return to a Contiguous Foreign Territory Under Section 235(b)(2)(C) of the Act

Congress has authorized that an alien "who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States" may be returned to that territory pending a proceeding under section 240 of the Act.  Section 235(b)(2)(C) of the Act.  Once the DHS places an alien into removal proceedings under section 240 of the Act, the alien is entitled to the due process rights afforded in a removal proceeding, even if the DHS elects to return the alien to Mexico under the Migrant Protection Protocols program.  In this case, we resolve the issue before us narrowly on the question whether the Immigration Judge properly terminated these proceedings for failure of the DHS to indicate the nature of the proceedings.

Given that the respondent did not appear for his hearing, we do not address the constitutional or statutory challenges to his return to Mexico under the Migrant Protection Protocols, because the notice to appear alleged he arrived in the United States and he has not been designated as an arriving alien.  Sections 235(a), (b)(2)(C) of the Act; 8 C.F.R. § 1001.1(q) (2020); cf. *Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 170 (BIA 2017) ("The DHS's decision to commence removal proceedings involves the exercise of

---

[8]   To the extent that amici are concerned that it is unclear whether the respondent is eligible for a redetermination of his custody status, we note that bond proceedings are separate and apart from removal proceedings.  8 C.F.R. § 1003.19(d) (2020).  The requirements for a notice to appear that are set forth in section 239(a)(1) of the Act and 8 C.F.R. § 1003.15(b) are applicable to these removal proceedings.  We do not address the requirements for the notice to appear in the context of other proceedings, such as those relating to bond.

[9]   As the DHS argues, it may amend the notice to appear or file a Form I-261 (Additional Charges of Inadmissibility/Deportability).  8 C.F.R. § 1240.10(e) (2020).

prosecutorial discretion, and neither the Immigration Judges nor the Board may independently review a decision by the DHS to forgo expedited removal proceedings or initiate removal proceedings in a particular case.").

The provisions governing the entry of in absentia orders of removal apply equally to all aliens placed in removal proceedings, including any alien who remains in a contiguous foreign territory pursuant to section 235(b)(2)(C) of the Act. Section 240(b)(5)(E) of the Act. "An alien does not need to be physically in the United States for the Immigration Judge to retain jurisdiction over pending [removal] proceedings and to conduct an in absentia hearing." *Matter of Sanchez-Herbert*, 26 I&N Dec. 43, 44 (BIA 2012). Since the DHS has elected to commence removal proceedings against the respondent and to prosecute them to a conclusion, the Immigration Judge is obligated to order his removal if the evidence supports a finding of removability on the ground charged and the respondent has not established eligibility for relief. *Matter of Roussis*, 18 I&N Dec. 256, 258 (BIA 1982).

## III. CONCLUSION

For the reasons set forth above, we conclude that the absence of a checked alien classification box on a notice to appear does not, by itself, render the notice to appear fatally deficient or otherwise preclude an Immigration Judge from exercising jurisdiction over removal proceedings, and it is therefore not a basis to terminate the proceedings of an alien who has been returned to Mexico under the Migrant Protection Protocols. Accordingly, we will sustain the DHS's appeal, reinstate the respondent's removal proceedings, and remand the record to the Immigration Judge for further proceedings. On remand, if the DHS establishes the respondent's removability based on the facts and the evidence, the Immigration Judge should enter an order of removal. *Matter of Sanchez-Herbert*, 26 I&N Dec. at 45.

**ORDER:** The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING OPINION*: Edward F. Kelly, Board Member

I join my colleagues in concluding that current law precludes termination of these removal proceedings.

However, I write separately to emphasize that our decision today expresses no opinion as to the unresolved issue of the statutory or constitutional authority for the Migrant Protection Protocols program, as applied, because any challenge to that program in these removal proceedings is collateral in nature. *See, e.g.*, section 235(b)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(C) (2018) (limiting the authority to return aliens to contiguous territory pending removal proceedings to those applicants for admission "who are arriving"); *see also Innovation Law Lab v. Wolf*, 951 F.3d 1073 (9th Cir. 2020) (upholding a preliminary injunction upon finding that the Migrant Protection Protocols program likely violates the statute when applied to aliens who lack valid entry documents), *stay granted*, No. 19A960, 2020 WL 1161432 (U.S. Mar. 11, 2020) (staying execution of the preliminary injunction pending the timely filing and disposition of a petition for writ of certiorari).