## MATTER OF HEALY AND GOODCHILD

### In Exclusion Proceedings

A-21672002
A-21672003

*Decided by Board July 3, 1979*

(1) An alien destined for the United States for the primary purpose of study at a school which has not been approved by the Attorney General for attendance by nonimmigrant students is subject to the provisions of section 101(a)(15)(F) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(F), and is not admissible as a nonimmigrant visitor for pleasure as defined by section 101(a)(15)(B) of the Act.

(2) The B-2, visitor for pleasure, nonimmigrant category is not a "catch-all" classification available to all who wish to come to the United States temporarily for whatever purpose but instead encompasses a specific, defined class of aliens. Section 101(a)(15)(B) of the Act; 22 C.F.R. 41.25.

(3) Where an alien has failed to establish his entitlement to status as a nonimmigrant under any of the classifications set forth in section 101(a)(15) of the Act, he is properly excludable under section 212(a)(20) of the Act, 8 U.S.C. 1182(a)(20), as an immigrant without the requisite travel or entry documents, not under section 212(a)(26) of the Act, as a nonimmigrant not in possession of the necessary documentation.

(4) Adequate notice of section 212(a)(20) as an applicable ground of exclusion is provided by sections 101(a)(15) and 214(b) of the Act, 8 U.S.C. 1101(a)(15) and 1184(b), which may mandate a finding that an alien is an immigrant whenever his right to a particular nonimmigrant classification is questioned by the Service.

(5) Knowledge of the falsity of a representation satisfies the fraud and willfulness requirements of section 212(a)(19) of the Act. *Suite v. INS,* 594 F.2d 972 (3 Cir. 1979).

(6) Section 291 of the Act, 8 U.S.C. 1361, places the burden upon the alien to demonstrate that he is not inadmissible under any provision of the Act; however, inasmuch as an alien excluded under the first clause of section 212(a)(19) is perpetually barred from admission to the United States, the factual basis of the finding of excludability should be subject to close scrutiny, particularly where the alleged fraud or misrepresentation involves a disputed issue as to the alien's subjective intent.

EXCLUDABLE: Act of 1952—Sec. 212(a)(19) [8 U.S.C. 1182(a)(19)]—Fraudulent visa

Sec. 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no valid immigrant visa

Sec. 212(a)(26) [8 U.S.C. 1182(a)(26)]—Student—no valid nonimmigrant visa

ON BEHALF OF APPLICANTS:
David Carliner, Esquire
Carliner & Gordon
1511 K Street, N.W.
Washington, D.C. 20005

ON BEHALF OF SERVICE:
George Indelicato
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

This case is before us on appeal from the April 26, 1978, decision of an immigration judge which found the applicants, Mr. Healy and Mr. Goodchild, excludable under section 212(a)(26) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(26). Mr. Healy was additionally found excludable under section 212(a)(19) of the Act. The appeal will be dismissed.

Mr. Healy, a native and citizen of Ireland and a resident of Australia, applied for a nonimmigrant visa at the United States Consulate General in Melbourne, Australia, for the stated purpose of visiting this country for a 1-month period. On September 7, 1977, he was issued a B-2 nonimmigrant visitor for pleasure visa, valid for multiple applications for admission to the United States within 3 months from the date of issuance. On that same date, Mr. Goodchild, a native and citizen of Great Britain, was issued a B-2 nonimmigrant visitor visa at the United States Embassy in London, England, which was valid for multiple applications for admission to this country within 6 months from the date of issuance.

In the course of inspection upon their respective arrivals in New York, each applicant was found to be in possession of a letter of acceptance for admission to a 9-month course of study at the Claymont School for Continuing Education, an institution which has not been approved for attendance by nonimmigrant students. The applicants were thereupon charged with excludability under section 212(a)(26) as nonimmigrant students not in possession of valid nonimmigrant student visas and under section 212(a)(19) as aliens who procured their visas by willfully misrepresenting material facts.

In the consolidated exclusion proceedings that ensued, the immigration judge found Mr. Goodchild excludable as charged under section 212(a)(26) but held that the charge under section 212(a)(19) could not be sustained in his case. As noted above, Mr. Healy was found excludable under both section 212(a)(26) and section 212(a)(19). The immigration judge's findings as to each charge will be examined in turn.

The facts underlying the section 212(a)(26) charge present an issue common to both applicants, specifically, whether an alien seeking admission to the United States for the primary purpose of attending an educational institution that has not been approved by the Attorney

23

General for attendance by alien students in accordance with section 101(a)(15)(F) of the Act, 8 U.S.C. 1101(a)(15)(F), may be properly admitted as a nonimmigrant visitor for pleasure pursuant to section 101(a)(15)(B) of the Act.

Under section 101(a)(15) of the Act, every alien is considered to be an immigrant unless he is able to establish that he is entitled to nonimmigrant status under one of the specified classes of nonimmigrants designated by Congress in section 101(a)(15)(A) through section 101(a)(15)(L). Section 214(b) of the Act, 8 U.S.C. 1184(b); 22 C.F.R. 41.10. Moreover, the burden is upon the alien to establish that he is entitled to the nonimmigrant classification and type of nonimmigrant visa for which he is an applicant. 22 C.F.R. 41.10; *cf.* section 291 of the Act, 8 U.S.C. 1361.

The applicants conceded that they are not entitled to status as nonimmigrant students under section 101(a)(15)(F) inasmuch as the Claymont School has not been approved by the Attorney General or his delegate.[1] Each applicant further acknowledged that the principal purpose of his visit was to participate in the basic course to which he was admitted at the Claymont School, that he had paid a deposit of $100 toward the $2,750 tuition for the course prior to seeking admission to the United States, and that he had been in attendance at the school since his parole into this country.

Counsel does not seriously contest the fact that the Claymont School is a school and that the applicants are students within the ordinary usage of those terms and we are satisfied that they are properly classifiable as such.[2] Counsel argues instead that section 101(a)(15)(F)

---

[1] Section 101(a)(15)(F) accords nonimmigrant status to:

an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established institution of learning or other recognized place of study in the United States, particularly designated by him and *approved by the Attorney General after consultation with the Office of Education of the United States,* which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student, and if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn .... (Emphasis added.)

[2] The purpose and program of the basic course at the Claymont School are described as follows in excerpts from the institution's 1977-78 catalog (Ex. 4A):

The Claymont School for Continuous Education is founded on the principle that true education must include techniques of self-perfecting in mind, body, and spirit and must realize the potential latent in normal men and women.... The daily schedule normally begins at 6 a.m. All students and staff share in psychological and spiritual exercises until breakfast. After breakfast, 4-5 hours are devoted to practical activities involving the acquisition of a wide variety of skills such as cooking, breadmaking, carpentry, housepainting, plumbing and electrical work, gardening, logging,

24

is solely concerned with alien students destined for approved schools. Since the Claymont School has not been accredited by the Service, he insists that the applicants are not subject to the provisions of section 101(a)(15)(F) of the Act but are admissible as visitors for pleasure. We disagree.

It is clear that absent Service approval of the school to which an alien student is destined, he may not establish eligibility for a nonimmigrant student visa under section 101(a)(15)(F). It does not follow ipso facto, however, that an alien bound for the United States for the primary purpose of pursuing a course of study at an unapproved school is entitled to status as a nonimmigrant visitor for pleasure under section 101(a)(15)(B). That such alien is not entitled to status as a nonimmigrant visitor is evident from the express terms of section 101(a)(15)(B) which includes among those classifiable as nonimmigrants:

an alien (*other than one coming for the purpose of study* or of performing skilled or unskilled labor or as a representative of foreign press, radio, film, or other foreign information media coming to engage in such vocation) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure; ... (Emphasis added.)

While the statutory term "pleasure" is not defined in the Act, State Department regulation 22 C.F.R. 41.25 provides the following definition:

(c) The term "pleasure", as used in section 101(a)(15)(B) of the Act, refers to legitimate activities of a recreational character, including tourism, amusement, visits with friends or relatives and rest; medical treatment, or activities of a fraternal, social or service nature.

*See also* Vol. 9, Foreign Affairs Manual, Part II, 22 C.F.R. 41.25, note 5(a) through (g).

It is thus apparent from the explicit language of section 101(a)(15)(B), as supplemented by the foregoing regulation, that the B-2, or visitor for pleasure, nonimmigrant category was not intended to be a "catch-all" classification available to all who wish to come to the United States temporarily for whatever purpose. Instead, as is the case with the other nonimmigrant classes enumerated by Congress in section 101(a)(15), section 101(a)(15)(B) was designed to encompass a specific, defined class of aliens; by the express terms of the statute, that class does not include aliens coming for the purpose of study. To accept counsel's theory would not only disregard the explicit language of

---

animal and vegetable husbandry, repairs and special crafts and skills such as spinning, woodworking and pottery to meet particular needs. ... In the afternoon ... the two groups not on house duty attend classes, which include work at the Gurdjieff sacred gymnastics, psychology, cosmology, art, music, and theatre. There are also special classes, some conducted by the School staff, some by visiting tutors, on subjects such as health, ecology and intermediate technology. ...

section 101(a)(15)(B) but would undermine the requirements for entitlement to student status under section 101(a)(15)(F) and the detailed regulations which have been promulgated to implement that section.[3] *See* 8 C.F.R. 214.2(f); 8 C.F.R. 214.3; 8 C.F.R. 214.4.

We accordingly hold that an alien bound for the United States for the primary purpose of study is not admissible as a nonimmigrant visitor for pleasure as defined by section 101(a)(15)(B) but must instead establish his entitlement to nonimmigrant student status under section 101(a)(15)(F) and the pertinent regulations. *Cf. Matter of Le Floch,* 13 I&N Dec. 251 (BIA 1969). We recognize that our decision in effect declares unapproved educational institutions such as the Claymont School to be unavailable to alien students. Our holding, however, is in keeping with the clear statutory scheme drawn by Congress which deems all aliens to be immigrants unless they can demonstrate that they qualify for status under one of the distinct nonimmigrant classes enumerated in section 101(a)(15). The dispositive fact is that Congress made no provision thereunder for aliens destined for the United States for the primary purpose of pursuing a course of study at an unapproved school.

Although we agree with the immigration judge that the applicants are excludable on the facts presented, we believe that section 212(a)(20), not section 212(a)(26), constitutes the appropriate ground of exclusion. Inasmuch as the applicants have failed to establish their entitlement to status as F-1 students, as B-2 visitors, or as nonimmigrants under any other classification set forth in section 101(a)(15), they are properly excludable as immigrants without the requisite travel or entry documents rather than as nonimmigrants not in possession of the necessary documentation. We note the absence from the record of an express reference to section 212(a)(20) as an applicable exclusion ground but are nevertheless satisfied under the circumstances of this case that the applicants had adequate notice of that charge. Whenever the right of an alien to a particular nonimmigrant classification is questioned by the Service, sections 101(a)(15) and 214(b) of the Act may mandate a finding that the alien is an immigrant.

The remaining issue before us concerns the finding of excludability under 212(a)(19) with respect to Mr. Healy. At the hearing, Mr. Goodchild testified that he had requested a visa valid for 9 months, telling the consul at the Embassy in London that he was "coming to a

[3] Section 101(a)(15)(F) and the correlative regulations manifestly have the dual purpose of protecting alien students by ensuring the legitimacy of the school to be attended and of facilitating the enforcement of the immigration laws with respect to those students.

26

community where we practice all sorts of living" (Tr. p. 27). He conceded that he did not disclose to the counsul that he intended to take an actual course of study here but accepted as accurate the immigration judge's summation that he had "more or less told them everything about the place except that it was a school" (Tr. p. 29). On the basis of this testimony, the immigration judge concluded, with the concurrence of the Service, that a charge under section 212(a)(19) had not been sustained with respect to Mr. Goodchild.

Mr. Healy testified that he had had but one brief conversation with a State Department employee at the United States Consulate in Melbourne prior to obtaining his visa.[4] He stated that he was told by that employee when he visited the Consulate to inquire about procedures for coming to the United States, that he need only fill out a visitor visa application form if he planned to remain here for 1 month or less but that he would have to produce documentary evidence of his intention to return to Australia if he contemplated a longer stay.[5] He testified that he told the employee that he would apply for a 1-month visit but would probably seek an extension of his stay from the Service after his arrival in this country.

Mr. Healy maintained that his visa was issued on the basis of that single conversation, which involved no discussion as to the purpose of his trip, and of the visitor visa application form which he contemporaneously completed and returned to the Consulate employee. On his application form, Mr. Healy responded to Items 18 and 19 as follows:

18. What is the purpose of your trip?
    "to visit America"
19. How long do you plan to stay in the USA?
    "one month"

In response to the inquiry set forth in Item 20, "At what address will you reside in the USA?", Mr. Healy provided the address of the Claymont School.

At several points in the course of the hearing, Mr. Healy indicated that notwithstanding his acceptance at the Claymont School for a 9-month course of study and his payment of a $100 deposit to the school, he had not firmly decided to remain in this country for the duration of the course at the time he applied for his visa. He stated

---

[4] It is not apparent from the record whether Mr. Healy spoke with a consular officer or with a local employee at the Consulate.

[5] As an element of his overall burden of demonstrating entitlement to nonimmigrant status under section 101(a)(15)(B) and (F), an alien must establish that he has a residence in a foreign country which he has no intention of abandoning. We are unaware of any State Department policy or practice which absolves an alien of his burden of establishing his bona fides as a nonimmigrant upon his representation that he intends to remain in this country for a relatively short period of time.

that he instead intended to visit the school and, if he found that course to be suitable, to apply to the Service for an extension of his stay. Mr. Healy explained that he would have requested additional time for his visit when he initially applied for a visa but felt he would have encountered difficulties in producing documentation to establish the requisite ties in Australia since he had terminated his employment in that country.

Mr. Healy stated that he believed that he was ineligible for a student visa since the Claymont School is not an approved educational institution and thought, as a consequence, that he could properly apply for a tourist visa. He further stated that while his acceptance at the Claymont School provided the primary impetus for seeking admission into the United States, he also wished to visit this country.

The immigration judge held that Mr. Healy had willfully misrepresented a material fact within the ambit of section 212(a)(19) by indicating that he was destined for a 1-month visit to the United States when he in fact knew that he was coming to study for a 9-month period. While the record is not free of ambiguities, we are, on balance, unable to agree with the conclusion reached by the immigration judge.

In determining whether an alien has procured his visa by fraud or willful misrepresentation of a material fact within the meaning of section 212(a)(19), it is appropriate to examine the circumstances as they existed at the time the visa was issued. Under the rule of law announced herein, an alien's trip to the United States for the primary purpose of participating in a course of study at an educational institution that has not been approved by the Service may not be characterized as a "visit" of a nature which would qualify him for status as a visitor for pleasure under section 101(a)(15)(B). This precise issue, however, has not previously been addressed by the Board. Given the uncertain state of the law at the time Mr. Healy applied for his visa, it is not unlikely that he considered the declared purpose of his trip, "to visit America," to be an accurate statement of his intent.[6] Moreover, we find Mr. Healy's explanation with respect to his stated anticipated length of stay plausible, if not compelling.

In interpreting the term "willful" for purposes of section 212(a)(19), the Court of Appeals for the Third Circuit held in a recently decided case that knowledge of the falsity of a representation satisfies the fraud and willfulness requirements of that section. *Suite* v. *INS*, 594 F.2d 972 (3 Cir. 1979). We are not persuaded that a finding of willful-

---

[6] We note that unlike Mr. Goodchild, Mr. Healy apparently was not afforded an opportunity to fully discuss the purpose of his trip with a consular officer prior to the issuance of his visa.

28

ness is warranted on the particular facts of this case, and we accordingly hold that Mr. Healy in not inadmissible under secton 212(a)(19) of the Act for having procured his visa by fraud or by willfully misrepresenting a material fact.

In so holding, we recognize that the Act places the burden on the alien to demonstrate that he is not inadmissible under one of the exclusionary grounds enumerated in secton 212(a). Section 291 of the Act, 8 U.S.C. 1361. We believe, however, that given the harsh consequences of a finding of excludability under the first clause of section 212(a)(19),[1] the factual basis of such finding should be subject to close scrutiny. This is particularly true where the alleged fraud or misrepresentation involves a disputed issue with respect to an alien's subjective intent.

In accordance with the foregoing discussion, we shall order each applicant excluded and deported solely on the ground of inadmissibility set forth in section 212(a)(20) of the Act.

IT IS ORDERED THAT the applicants be excluded and deported from the United States pursuant to section 212(a)(20) of the Immigration and Nationality Act.

FURTHER ORDER: The appeal is dismissed.

---

[1] An alien excluded under the first clause of section 212(a)(19) as one who "... seeks to procure, or has sought to procure, or has procured a visa or other documentation ... by fraud, or by willfully misrepresenting a material fact ..." is perpetually barred from admission to the United States. In contrast, the Board has held that a finding of inadmissibility under the second clause of the section, which refers to any alien who "... seeks to enter the United States by fraud, or by willfully misrepresenting a material fact ..." affects only the application for admission then under consideration and does not constitute a continuing ground of inadmissibility. *Matter of M—*, 6 I&N Dec. 752 (BIA 1955).