# Matter of M-D-C-V-, Respondent

*Decided July 14, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Under section 235(b)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(C) (2018), an alien who is arriving on land from a contiguous foreign territory may be returned by the Department of Homeland Security to that country pursuant to the Migrant Protection Protocols, regardless of whether the alien arrives at or between a designated port of entry.

FOR RESPONDENT: Bashir Ghazialam, Esquire, San Diego, California

BEFORE: Board Panel: MALPHRUS and CREPPY, Appellate Immigration Judges; MORRIS, Temporary Appellate Immigration Judge.

MALPHRUS, Appellate Immigration Judge:

In a decision dated October 11, 2019, an Immigration Judge denied the respondent's applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A) (2018).[1] The respondent has appealed from that decision, requesting termination of her proceedings. The request for oral argument is denied. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador. On May 27, 2019, the Department of Homeland Security ("DHS") initially served a notice to

---

[1] On appeal, the respondent generally states that the Immigration Judge erred in denying her application for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988), and she requests that her application be granted. However, because the respondent has not meaningfully challenged the Immigration Judge's denial, this issue is not properly before us. *See, e.g.*, *Matter of N-A-I-*, 27 I&N Dec. 72, 73 n.1 (BIA 2017) (noting that because the respondent did not challenge the Immigration Judge's denial of his application for relief under the Convention Against Torture, the issue was deemed waived).

appear on the respondent, charging her with inadmissibility under section 212(a)(7)(A)(i) of the Act, 8 U.S.C. § 1182(a)(7)(A)(i) (2018), as an alien who has no valid entry document.[2]  The notice to appear factually alleges that the respondent entered the United States at or near the Otay Mesa port of entry on May 26, 2019.  A Record of Deportable/Inadmissible Alien (Form I-213) states that, on the same day she entered, the respondent was apprehended 20 yards north of the southern border and 3 miles west of the Otay Mesa port of entry.  The DHS returned the respondent to Mexico to await removal proceedings under the Migrant Protection Protocols.[3]

On August 29, 2019, the respondent appeared without counsel at the port of entry for her removal hearing.  At that time, the DHS served her with a Form I-261 (Additional Charges of Inadmissibility/Deportability), which amended the notice to appear to state that the respondent was "an arriving alien" and that she was paroled into the United States for the sole purpose of attending removal proceedings.  The Immigration Judge sustained the charge of inadmissibility and determined that the respondent did not establish eligibility for relief from removal on the merits.

## II.  ANALYSIS

The respondent, who is now represented on appeal, argues that her proceedings should have been terminated.  Specifically, she asserts that her return to Mexico by the DHS under the Migrant Protection Protocols was unlawful because only arriving aliens may be returned to contiguous countries to await proceedings under section 235(b)(2)(C) of the Act, 8 U.S.C. § 1225(b)(2)(C) (2018).  She further contends that the DHS improperly classified her as an arriving alien after apprehending her inside

---

[2]  Section 212(a)(7)(A)(i) of the Act provides, in pertinent part, as follows:

> Except as otherwise specifically provided in this Act, any immigrant at the time of application for admission—
> (I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality . . .
> . . . .
> is inadmissible.

[3]  We note that on March 11, 2020, the Supreme Court granted the Government's application for a stay pending its filing of a petition for certiorari to contest an April 8, 2019, order from the United States District Court for the Northern District of California granting a preliminary injunction against the DHS's implementation of the Migrant Protection Protocols.  *Wolf v. Innovation Law Lab*, 140 S. Ct. 1564 (2020).

the United States between ports of entry. For the reasons that follow, we conclude that termination of these proceedings is inappropriate. *See Matter of J.J. Rodriguez*, 27 I&N Dec. 762, 766 (BIA 2020) ("It is well settled that an Immigration Judge may only 'terminate removal proceedings under [specific] circumstances identified in the regulations' and where 'the charges of removability against a respondent have not been sustained.'" (alteration in original) (quoting *Matter of S-O-G- & F-D-B-*, 27 I&N Dec. 462, 468 (A.G. 2018))); *cf. Matter of Herrera-Vazquez*, 27 I&N Dec. 825, 831 (BIA 2020) (following *Matter of J.J. Rodriguez* in holding that the Immigration Judge had no basis to terminate the proceedings of an alien who had been returned to Mexico under the Migrant Protection Protocols).[4]

## A. Inadmissibility Under Section 212(a)(7)(A)(i) of the Act

The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, has stated that section 212(a)(7)(A)(i)(I) of the Act "has three elements: the individual in question (1) is an immigrant (2) who 'at the time of application for admission' (3) lacks a valid entry document." *Minto v. Sessions*, 854 F.3d 619, 624 (9th Cir. 2017) (citation omitted). The respondent conceded alienage before the Immigration Judge, and there is nothing in the record to indicate that she is not properly classified as an "immigrant" or that she possessed a valid entry document. *See Matter of Herrera-Vazquez*, 27 I&N Dec. at 833 (holding that an alien seeking admission who cannot establish entitlement under section 101(a)(15) of the Act, 8 U.S.C. § 1101(a)(15) (2018), to status as a nonimmigrant, such as a tourist, student, or temporary worker, is properly deemed to be an immigrant without the requisite travel or entry documents (citing *Matter of Healy and Goodchild*, 17 I&N Dec. 22, 26 (BIA 1979))). More specifically, there is no indication that the respondent possessed a valid entry document *at the time of her application for admission*, that is, the date that she physically entered the United States.

According to section 235(a)(1) of the Act, "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." *See also Minto*, 854 F.3d at 624; *Matter of Lemus*, 25 I&N Dec. 734, 743 (BIA 2012) ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are

---

[4] In *Matter of Herrera-Vazquez*, 27 I&N Dec. at 834, we declined to address constitutional or statutory challenges to the alien's return to Mexico under the Migrant Protection Protocols because he did not appear for his hearing. The respondent, through counsel, has raised the statutory and regulatory issues we discuss here.

present in this country without having formally requested or received such permission . . . ." (citing section 235(a)(1) of the Act)); *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 523 (BIA 2011) (stating that "the broad category of applicants for admission . . . includes, inter alia, any alien present in the United States who has not been admitted"). An alien's application for admission begins on the date he or she is present in the United States without admission or arrives in the country, whether or not at a port of entry. *See Minto*, 854 F.3d at 624 (stating that "an immigrant . . . is deemed by law to be making a continuing application for admission by his mere presence" in the United States). The respondent does not dispute that she meets the definition of an applicant for admission. Accordingly, the Immigration Judge properly found the respondent to be inadmissible under section 212(a)(7)(A)(i) of the Act. *See Matter of Herrera-Vazquez*, 27 I&N Dec. at 833 (stating that the alien, who was apprehended between ports of entry and returned to Mexico under the Migrant Protection Protocols, was potentially subject to removal under section 212(a)(7)(A)(i)(I) where the DHS proffered evidence of his presence in the United States without a valid entry document).

The respondent also argues that termination was appropriate because the DHS did not initially check the box on the notice to appear classifying her as an arriving alien at the time of service, so she did not receive proper notice of the proceedings under section 239(a)(1) of the Act, 8 U.S.C. § 1229(a)(1) (2018). This argument is foreclosed by *Matter of Herrera-Vazquez*, 27 I&N Dec. at 827–31, where we held that a notice to appear similar to the respondent's provided proper notice of the nature of the proceedings and the charge of inadmissibility, as required by section 239(a)(1) of the Act and 8 C.F.R. § 1003.15(b) (2020). *See also id.* at 834 & n.9 (noting that the DHS may amend the notice to appear or file a Form I-261 with additional charges of inadmissibility or deportability).

### B. Authority To Return Aliens Pending Removal Proceedings

The DHS's statutory authority to apply the Migrant Protection Protocols is derived from section 235(b)(2)(C) of the Act. *See Matter of J.J. Rodriguez*, 27 I&N Dec. at 763–64. Contrary to the respondent's arguments, this authority, as it relates to her, is clearly supported by the text of the statute.

Section 235(b)(2)(C) of the Act provides that "an alien described in [section 235(b)(2)(A)] who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States" may be returned to that territory by the DHS pending a removal proceeding under

section 240 of the Act, 8 U.S.C. § 1229a (2018).[5]  An alien described in section 235(b)(2)(A) includes one "who is an applicant for admission," such as the respondent, "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  However, section 235(b)(2)(B) makes an exception, providing that section 235(b)(2)(A) "shall not apply" to crewmen, stowaways, *or aliens "to whom [section 235(b)(1)] applies.*"  Section 235(b)(2)(B)(ii) of the Act (emphasis added).  Section 235(b)(1), which sets out procedures for expedited removal, generally refers to aliens who are either "arriving in the United States" or are "described in [section 235(b)(1)(A)(iii)]" (namely, those who have not been admitted or paroled and who have not established continuous physical presence in the United States for the previous 2-year period), if "an immigration officer determines" they are "inadmissible under [sections 212(a)(6) or 212(a)(7)]."[6]

Read together, these statutory provisions indicate Congress' intent to allow aliens, such as the respondent, who were apprehended by the DHS outside of a port of entry and charged with inadmissibility under section 212(a)(7)(A)(i)(I) of the Act, to be returned to Mexico, so long as the alien is "arriving on land . . . from a foreign territory contiguous to the United States," that is, Mexico.  Section 235(b)(2)(C) of the Act.  We note that both section 235(a)(1), which defines an "applicant for admission," and section 235(b)(2)(C), which provides for the return of aliens to contiguous countries,

---

[5]   The statutory reference to the Attorney General in section 235(b)(2)(C) of the Act now refers to the Secretary of Homeland Security.  *See* 6 U.S.C. §§ 251, 552(d) (2018); *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

[6]   In *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. at 523–24, we determined that the DHS retains prosecutorial discretion to place aliens into section 240 removal proceedings, even though they may also be subject to expedited removal under section 235(b)(1)(A)(i) of the Act.  As noted, we stated in that decision that "aliens who are in the broad category of applicants for admission, which includes, inter alia, any alien present in the United States who has not been admitted, are entitled to section 240 removal proceedings."  *Id.* at 523 (citing section 235(a)(1) of the Act).  However, we read the section 235(b)(2)(B) exception to mean that the three classes of aliens referenced therein, "including those subject to expedited removal under section 235(b)(1)(A)(i), are not *entitled* to a section 240 proceeding, *not* that these classes of aliens may not be placed in such proceedings."  *Id.* We have also stated that "neither the Immigration Judges nor the Board may review a decision by the DHS to forgo expedited removal proceedings or initiate removal proceedings in a particular case." *Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 170 (BIA 2017) (citing *Matter of G-N-C-*, 22 I&N Dec. 281, 284 (BIA 1998)).  We recognize that the Supreme Court is considering whether to grant a petition for certiorari that raises the question whether section 235(b)(2)(B)(ii) excepts aliens to whom section 235(b)(1) (expedited removal) *could* apply, or whom the DHS has *actually placed in* expedited removal. *See Wolf*, 140 S. Ct. at 1564; *Innovation Law Lab v. Nielsen*, 366 F.Supp.3d 1110, 1121–26 (N.D. Cal. 2019).

specify that the statutory provision has effect, "whether or not [the alien's arrival is] at a designated port of arrival." The term "arriving" thus encompasses an alien, like the respondent, who was apprehended 20 yards north of the southern border, and not at a port of entry, on the same day she crossed into the United States.

Our interpretation regarding whom the DHS can properly place into the Migrant Protection Protocols is not without limitation. The use of the present progressive tense "arriving," rather than the past tense "arrived," implies some temporal or geographic limit, so that aliens, like the respondent, who are encountered near the border may be subject to the contiguous territory provision. The "use of the present progressive, like use of the present participle, denotes an ongoing process." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011–12 (9th Cir. 2020) (citation omitted) (holding that "arriving" is best understood as a process rather than a singular moment in time); *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) (stating that the "use of the present progressive tense, formed by pairing a form of the verb 'to be' and the present participle, or '-ing' form of an action verb, generally indicates continuing action"). *See generally United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). Thus, we need only decide in this case whether the respondent, who was apprehended just inside the border upon crossing into the United States, meets the statutory requirements for being placed into the Migrant Protection Protocols.[7] We have little difficulty holding that, under these facts, the respondent is properly considered to be "arriving."

The respondent urges us to read certain regulations as narrowing the DHS's statutory authority to return aliens to contiguous countries pending removal proceedings. In relevant part, 8 C.F.R. §§ 235.3(d) and 1235.3(d) (2020) provide that "[i]n its discretion, the [DHS] may require any alien who appears inadmissible and *who arrives* at a land border port-of-entry from Canada or Mexico, to remain in that country while awaiting a removal hearing." (Emphasis added.) The respondent argues that these provisions thus limit the DHS's authority to apply section 235(b)(2)(C) of the Act to "arriving aliens," as that term is defined in 8 C.F.R. § 1001.1(q) (2020).[8]

---

[7]  We need not address the question whether section 235(b)(2)(C) of the Act could be applied to aliens apprehended well within the interior of the United States or long after crossing the border.

[8]  As relevant here, 8 C.F.R. § 1001.1(q) currently provides:

> The term *arriving alien* means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

However, we do not read 8 C.F.R. §§ 235.3(d) and 1235.3(d) as limiting the DHS's discretion under section 235(b)(2)(C) in that manner.

First, it is not clear, and we do not assume as the respondent does, that section 235(b)(2)(C) of the Act or the regulations at 8 C.F.R. §§ 235.3(d) and 1235.3(d) refer to "arriving aliens," as they are defined in 8 C.F.R. § 1001.1(q). "Arriving alien" is a long-standing term of art under the immigration laws. Congress apparently has never defined the term "arriving alien," despite its use in immigration law for over a century. *See* Immigration Act of 1917, ch. 29, § 16, 39 Stat. 874, 885 (Feb. 5, 1917) (providing for "examination of all arriving aliens"). But while there may be uncertainty as to the exact parameters of the term prior to its definition by the legacy Immigration and Naturalization Service ("INS") in 1997, it has traditionally referred to aliens who appear at a port of entry. *See, e.g.*, *Matter of F-*, 1 I&N Dec. 90, 91 (BIA 1941) (using the term "arriving aliens" in discussing aliens entering the United States from Canada who are questioned by immigration inspectors).

However, when Congress enacted section 235(b)(2)(C) in 1996, it included aliens "(whether or not at a designated port of arrival)," which is clearly broader than the historical understanding of "arriving aliens," as well as the regulatory definition at 8 C.F.R. § 1001.1(q). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-28, Div. C, § 302(a), 110 Stat. 3009-546, 3009-583 ("IIRIRA"). At the same time, because section 235(b)(2)(C) is limited to aliens "arriving on land," it describes a class of aliens *narrower* than the regulation, which includes those arriving at ports of entry generally, that is, land, air, or sea ports of entry. This supports the interpretation that section 235(b)(2)(C) was not intended to be limited to the definition of "arriving aliens" in 8 C.F.R. § 1001.1(q).[9]

Moreover, 8 C.F.R. §§ 235.3(d) and 1235.3(d) refer to an alien "who arrives at a land border port-of-entry," which also differs from the definition in 8 C.F.R. § 1001.1(q). By contrast, other regulatory sections explicitly cross-reference the term "arriving alien," rather than referring to an alien

---

[9]  We recognize that it is possible to interpret the phrase "an alien . . . who is arriving" in section 235(b)(2)(C) of the Act to be equivalent to an "arriving alien." *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,312–13 (Mar. 6, 1997) (interim rule) (Supplementary Information) (describing sections 240B and 241 of the Act, 8 U.S.C. §§ 1229c and 1231 (2018), as referring to "arriving aliens"). However, we have not addressed that phraseology and did not rely on it in determining that arriving aliens are not eligible for voluntary departure in *Matter of Arguelles-Campos*, 22 I&N Dec. 811, 814 n.2 (BIA 1999). Moreover, there are sections of the Act that use the exact phrase "arriving alien." *See, e.g.*, sections 235(a)(2), (c)(1) of the Act. For our purposes, we need only consider section 235(b)(2)(C) of the Act and, for the reasons discussed above, we do not read it as being limited to "arriving aliens," as that term is defined in 8 C.F.R. § 1001.1(q).

"who arrives." *See, e.g.*, 8 C.F.R. § 1240.1(d) (2020) ("An Immigration Judge may allow only an arriving alien to withdraw an application for admission."). In this regard, we find the regulations to be ambiguous as to whether the definition of an "arriving alien" in 8 C.F.R. § 1001.1(q) is implicated by 8 C.F.R. §§ 235.3(d) and 1235.3(d).

Second, even if 8 C.F.R. § 1001.1(q) is implicated, it is unclear whether 8 C.F.R. §§ 235.3(d) and 1235.3(d) foreclose the DHS's discretion with respect to aliens arriving between ports of entry because those regulations are permissive, not proscriptive. They provide that the DHS "may" require certain aliens who arrive at a land port of entry to remain in Canada or Mexico, but they do not limit that practice *only* to those aliens. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) (stating that "the word 'may[]' . . . implies discretion" (citation omitted)); *cf. United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1020 & n.10 (9th Cir. 2011) (noting that 8 C.F.R. § 1240.1(d) permits an Immigration Judge to grant a request for withdrawal "*only* if the alien . . . is an arriving alien," as defined by 8 C.F.R. § 1001.1(q) (emphasis added)).

Nor do 8 C.F.R. §§ 235.3(d) and 1235.3(d) prohibit the DHS from returning other aliens "arriving on land (whether or not at a designated port of arrival)" to contiguous countries, consistent with the DHS's broader statutory authority. Rather, the regulations are silent as to whether aliens who illegally enter the United States between ports of entry may be returned to contiguous countries. We should be reluctant to read a regulation as foreclosing the DHS from taking action that the statute clearly gives it the authority and discretion to carry out, consistent with its duty to enforce the immigration laws. *See generally Oregon Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1087 (9th Cir. 2016) (noting the "crucial distinction between statutory language that affirmatively protects or prohibits a practice and statutory language that is silent about this practice").

"To determine whether a regulation's meaning is truly ambiguous, [we] must 'carefully consider the text, structure, history, and purpose of a regulation.'" *Sec'y of Labor, U.S. Dep't of Labor v. Seward Ship's Drydock, Inc.*, 937 F.3d 1301, 1307 (9th Cir. 2019) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (stating that courts afford deference to regulations that are "genuinely ambiguous" pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997))); *see also Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945). In making our determination that 8 C.F.R. §§ 235.3(d) and 1235.3(d) are ambiguous, we have also considered the history of the regulations.

Prior to Congress's enactment of section 235(b)(2)(C) in the IIRIRA, the INS argued in a case before the Board that its long-standing practice was to require some aliens arriving at land border ports of entry to await exclusion proceedings in Canada or Mexico. *Matter of Sanchez*, 21 I&N Dec. 444,

449–54, 459–62, 464–66 (BIA 1996) (en banc) (terminating exclusion proceedings where the INS had returned an alien to Mexico and suggesting that the practice should be addressed by regulation or statutory change). In 1996, Congress broadened the class of aliens who could be returned to Mexico to await proceedings beyond that historical practice by (1) in section 240(a)(2) of the Act, eliminating the distinction between exclusion and deportation proceedings, (2) defining "applicants for admission" more broadly than aliens who had previously been placed into exclusion proceedings, *see Matter of Rosas*, 22 I&N Dec. 616, 620–21 (BIA 1999) (en banc), and (3) providing that aliens who are "arriving on land (*whether or not at a designated port of arrival*)" from a foreign contiguous territory may be returned to that country pending removal proceedings in section 235(b)(2)(C) of the Act.  (Emphasis added.)

In subsequently proposing the regulation at 8 C.F.R. § 235.3(d), the INS stated that "an applicant for admission arriving at a land border port-of-entry and subject to a removal hearing under section 240 of the Act may be required to await the hearing in Canada or Mexico."  Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 445 (Jan. 3, 1997) (Supplementary Information).[10]  The supplementary information also explained that the INS was permitted to return aliens arriving at land border ports of entry to contiguous countries, consistent with its prior practice under previously existing statutes and regulations. *Id.* ("This simply adds to statute and regulation a long-standing practice of the Service.").

In light of the ambiguity in the regulations, we decline to find that the INS's reference to agency practice then limits the DHS's practice now, particularly without an explicit statement to that effect.  Doing so would greatly restrict the Government's ability to utilize the Migrant Protection

---

[10] We note that the proposed language of 8 C.F.R. § 235.3(d) was not changed in the interim final rule, and the text of that regulation and of the parallel regulation at 8 C.F.R. § 1235.3(d) has remained unchanged. *See* 62 Fed. Reg. at 10,357; Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9823, 9837 (Feb. 28, 2003) (duplicating 8 C.F.R. § 235.3 at 8 C.F.R. § 1235.3).  However, the regulatory definition of an "arriving alien" has been amended since 1997. *See, e.g.*, Eligibility of Arriving Aliens in Removal Proceedings To Apply for Adjustment of Status and Jurisdiction To Adjudicate Applications for Adjustment of Status, 71 Fed. Reg. 27,585, 27,585 (May 12, 2006) (clarifying the applicability of the "arriving alien" definition to paroled aliens); Amendment of the Regulatory Definition of Arriving Alien, 63 Fed. Reg. 19,382, 19,383 (Apr. 20, 1998) (amending the definition to, inter alia, clarify that "an alien coming from abroad to a port in the United States may be considered an applicant for admission regardless of whether he or she subjectively desires admission") (Supplementary Information).

Protocols at the southern border because the clear majority of inadmissible aliens apprehended there are located between ports of entry. *See* U.S. Customs & Border Prot., CBP Enforcement Statistics Fiscal Year 2020, https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics (last visited July 14, 2020).

In sum, we read the regulations at 8 C.F.R. §§ 235.3(d), 1235.3(d), and 1001.1(q) as not imposing such a severe restriction on the DHS's statutory authority under section 235(b)(2)(C) of the Act and thus on the reach of the Migrant Protection Protocols. This is particularly so given the ambiguity as to whether 8 C.F.R. § 1001.1(q) was intended to limit the DHS's authority under the Act.[11] We therefore conclude that the regulations do not preclude the DHS from applying the Migrant Protection Protocols to aliens apprehended between ports of entry. Consequently, we hold that under section 235(b)(2)(C) of the Act, an alien who is arriving on land from a contiguous foreign territory may be returned by the DHS to that country pursuant to the Migrant Protection Protocols, regardless of whether the alien arrives at or between a designated port of entry.

## C.  Arriving Alien Classification

The respondent also argues that in improperly classifying her as an "arriving alien," the DHS deprived her of her constitutional, statutory, and regulatory rights, including her right to apply for asylum. In her view, only "arriving aliens" may be returned to Mexico to await removal proceedings under section 235(b)(2)(C), and she contends that the DHS cannot establish that she is an "arriving alien" under 8 C.F.R. § 1001.1(q). She claims that she was deprived of her rights because the DHS improperly returned her to

---

[11]  In contrast, other immigration regulations have clearly and unambiguously limited the reach of certain statutory language. For example, section 208(d)(6) of the Act, which addresses frivolous applications for asylum, states that "[i]f the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice [from the Immigration Judge], the alien shall be permanently ineligible for any benefits under this Act." The word "frivolous" means there is "no rational argument based on the law or evidence in support of [a] claim." *Black's Law Dictionary* 668 (6th ed. 1990). However, the regulation at 8 C.F.R. § 1208.20 (2020) limits the application of section 208(d)(6) by directing that an asylum applicant is subject to that provision "only if a final order . . . specifically finds that the alien knowingly filed a frivolous asylum application. . . . [A]n asylum application is frivolous if any of its material elements is deliberately fabricated." Thus, the regulation only permits a finding that an application is "frivolous" where the alien deliberately presents a claim whose material elements are false. *See Matter of Y-L-*, 24 I&N Dec. 151, 153–55 (BIA 2007) (discussing the statutory and regulatory framework for a frivolousness finding and noting that the regulation provides procedural safeguards and limitations).

Mexico and that termination of the proceedings is therefore appropriate. However, the question whether the respondent was properly classified as an arriving alien is separate from whether she could be returned to Mexico consistent with the Migrant Protection Protocols.

It is not necessary to decide whether the DHS properly classified the respondent as an "arriving alien" upon her return for her asylum hearing, because she has not established that she was prejudiced in these proceedings by that classification, or by her return to Mexico under the Migrant Protection Protocols. *See Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018) ("As a general rule, an individual may obtain relief for a due process violation only if he shows that the violation caused him prejudice, meaning the violation potentially affected the outcome of the immigration proceeding."); *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (requiring the alien to demonstrate "prejudice, which means that the outcome of the proceeding may have been affected by the alleged [due process] violation").[12]  An alien who is properly classified as an arriving alien faces significant limitations on his or her options within the immigration system, but the respondent has not shown that being classified as an arriving alien has impacted her immigration proceedings in any meaningful way.

First, any distinction regarding the burden of proof on "arriving aliens" in removal proceedings was not at issue in the proceedings below. By statute, an applicant for admission bears the burden to establish that he or she is "clearly and beyond doubt entitled to be admitted to the United States and is not inadmissible."  Section 240(c)(2)(A) of the Act; *see also Matter of Herrera-Vazquez*, 27 I&N Dec. at 831–32.  The regulatory burden of proof for arriving aliens is substantively the same as the statutory burden of proof for applicants for admission. *See* 8 C.F.R. § 1240.8(b) (2020).[13]  For aliens charged as being in the United States without being admitted or paroled, the DHS must first establish the respondent's alienage and then, "unless the respondent demonstrates by clear and convincing evidence that he or she is lawfully in the United States pursuant to a prior admission," the

---

[12]  Since the Ninth Circuit's legal standard for sufficient prejudice—whether the outcome "may have been" affected by the alleged due process violation—is controlling in this case, we need not consider if we would, instead, articulate the standard as "is likely to be."

[13]  The regulation at 8 C.F.R. § 1240.8(b) provides in full:

> *Arriving aliens*. In proceedings commenced upon a respondent's arrival in the United States or after the revocation or expiration of parole, the respondent must prove that he or she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged.

same regulatory burden applies. 8 C.F.R. § 1240.8(c);[14] *see also* section 240(c)(2)(B) of the Act; *Matter of Herrera-Vazquez*, 27 I&N Dec. at 832 n.7. Here, however, the respondent conceded alienage, and there was no indication that she was lawfully in the United States pursuant to a prior admission. Therefore the DHS's "arriving alien" classification did not result in prejudice to the respondent as regards this burden of proof.

The respondent filed applications for asylum, withholding of removal, and protection against the Convention Against Torture, all of which the Immigration Judge denied on the merits after a hearing and consideration of the respondent's testimony and evidence. Classification as an "arriving alien" does not affect the standards of proof for those applications. *See Matter of Herrera-Vazquez*, 27 I&N Dec. at 834. Nor does such classification impact the right to appeal the removal order. *See* section 240(c)(5) of the Act; 8 C.F.R. § 1240.15 (2020). Because the respondent was able to apply for any relief for which she was eligible and has had an opportunity to appeal, she has not been deprived of due process rights in this regard. *Cf. Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 171 (BIA 2017) (concluding that the respondents were not deprived of due process rights when the DHS bypassed the credible fear interview process and initiated removal proceedings, because they would "receive a full and fair hearing on their application by the Immigration Judge").

The respondent argues that, as a practical matter, aliens subjected to the Migrant Protection Protocols do not have adequate access to counsel. Aliens in immigration proceedings have the statutory and regulatory privilege to be represented by counsel of their choice, at no expense to the Government. *See* sections 240(b)(4)(A), 292 of the Act, 8 U.S.C. §§ 1229a(b)(4)(A), 1362 (2018); 8 C.F.R. §§ 1003.16(b), 1240.3, 1240.11(c)(1)(iii) (2020). While many aliens may, as a general matter, face practical impediments to obtaining counsel, including being in detention or lacking financial resources (whether or not detained), these circumstances do not alone constitute a due process violation. Rather, an alien must show more to establish a violation of due process. We have held that the lack of counsel does not amount to a denial of due process, so long as it was not unfair or did not demonstrably prejudice

---

[14] The regulation at 8 C.F.R. § 1240.8(c) provides in full:

> *Aliens present in the United States without being admitted or paroled*. In the case of a respondent charged as being in the United States without being admitted or paroled, the Service must first establish the alienage of the respondent. Once alienage has been established, unless the respondent demonstrates by clear and convincing evidence that he or she is lawfully in the United States pursuant to a prior admission, the respondent must prove that he or she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged.

the respondent.  *Matter of Santos*, 19 I&N Dec. 105, 107–10 (BIA 1984).  There is no such prejudice here.

We recognize that under controlling Ninth Circuit law, "before [an alien] continues without counsel in an immigration proceeding for which there is a statutory right to counsel, due process mandates that 'there must be a knowing and voluntary waiver of the right to counsel,' which requires that the [Immigration Judge] '(1) inquire specifically as to whether [the alien] wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response.'"  *Zuniga v. Barr*, 946 F.3d 464, 471 (9th Cir. 2019) (quoting *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004)).  Moreover, where "an alien . . . shows that he has been denied the statutory right to be represented by counsel in an immigration proceeding[, he] need not also show that he was prejudiced by the absence of the attorney."  *Id.* (quoting *Montes-Lopez v. Holder*, 694 F.3d 1085, 1093–94 (9th Cir. 2012)).

In this regard, the record reflects that the respondent stated at her initial hearing that she wished to represent herself.  Nevertheless, the Immigration Judge provided her a list of free legal services and advised her to try to obtain counsel.  When the respondent appeared alone at the resumed proceedings, the Immigration Judge asked her again if she wanted to represent herself, to which she replied, "Yes."  Under these circumstances, the respondent waived the right to counsel.

Although the respondent appeared pro se below, she is now represented and has the benefit of counsel on appeal.  She has not pointed to any specific aspects of her claims for relief that were prejudiced as a result of the absence of counsel at her hearing.  *See Matter of Santos*, 19 I&N Dec. at 110 (declining to find prejudice where the respondent was represented by counsel on appeal).  On this record, therefore, we do not find that the respondent was deprived of due process by a lack of counsel.

The respondent has not established that she was prevented by her classification as an arriving alien from applying for any other form of relief for which she is eligible.  She correctly notes that aliens charged as "arriving aliens" are subject to additional restrictions on eligibility for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (2018), and for voluntary departure in lieu of being subject to removal proceedings under section 240B(a)(1) of the Act, 8 U.S.C. § 1229c(a)(1) (2018).  *See* section 240B(a)(4) of the Act; *Matter of Silitonga*, 25 I&N Dec. 89, 92 (BIA 2009).  However, there is no indication that the respondent would have been eligible for either form of relief.  *See* 8 C.F.R. §§ 1240.26(b)(1), 1245(a)(1)(ii) (2020).

In sum, the respondent received a full and fair hearing before the Immigration Judge and was able to apply for the relief she requested.  On this record, there is no basis to determine that the outcome of the proceeding

was impacted by the "arriving alien" classification or by her return to Mexico under the Migrant Protection Protocols. Consequently, we are not persuaded that the respondent suffered any prejudice or that termination of the proceedings is appropriate. *See Colmenar*, 210 F.3d at 971; *Matter of S-O-G- & F-D-B-*, 27 I&N Dec. 462, 465–68 (A.G. 2018); *see also Matter of J.J. Rodriguez*, 27 I&N Dec. at 766.[15]

## D. Respondent's Applications for Relief

We turn now to the respondent's applications for asylum and withholding of removal. The record reflects that she received one threatening phone call while living in El Salvador and left the country approximately 9 days later. A few months after her departure, she learned that a threatening note was left at her home when she left. We affirm the Immigration Judge's determination that the respondent did not establish eligibility for the requested relief because the harm she suffered in El Salvador, considered in the aggregate, does not rise to the level of past persecution, *see Matter of V-F-D-*, 23 I&N Dec. 859, 863 (BIA 2006), and she has not shown a well-founded fear of future persecution, *see Matter of A-E-M-*, 21 I&N Dec. 1157, 1159–60 (BIA 1998).[16]

In reaching our determination, we have considered the Ninth Circuit's case law, which is controlling in this case. Specifically, in *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028–29 (9th Cir. 2019), the court concluded that two threats, one over the phone and another in person, did not rise to the level of persecution. *See also Lim v. INS*, 224 F.3d 929, 936–37 (9th Cir. 2000)

---

[15] We also point out that termination would render the proceedings ultra vires, and the respondent would not be in a position to seek the relief she requested here. *See Matter of Rosales Vargas and Rosales Rosales*, 27 I&N Dec. 745, 752 n.11 (BIA 2020).

[16] The Immigration Judge determined that the pro se respondent was not harmed on account of her membership in a particular social group based on the social groups he articulated for her below. On appeal, the respondent, through counsel, attempts to advance newly articulated social groups and argues that the Immigration Judge did not sufficiently consider whether she established a claim for asylum on the basis of religion. *See* section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (2018). We need not resolve whether the respondent's fear was based on her membership in a valid particular social group, her religion, or another protected ground because, even assuming that a nexus to a protected ground exists, she has not established eligibility for asylum. *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Matter of A-B-*, 27 I&N Dec. 316, 340 (A.G. 2018) (explaining that if an application is fatally flawed in one respect, an Immigration Judge or the Board need not examine the remaining elements of the asylum claim), *abrogated on other grounds by Grace v. Whitaker*, 344 F. Supp. 3d 96, 127 (D.D.C. 2018), *appeal docketed sub nom. Grace v. Barr*, No. 19-5013 (D.C. Cir. Jan. 30, 2019).

(concluding that the alien's mail and telephone threats alone did not amount to past persecution). The Ninth Circuit further explained that it has "been most likely to find persecution where threats are repeated, specific and 'combined with confrontation or other mistreatment.'" *Duran-Rodriguez*, 918 F.3d at 1028 (citation omitted). Death threats alone can constitute "persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." *Id.* (quoting *Lim*, 224 F.3d at 936). The Immigration Judge reasonably concluded that the record does not establish that the two threats the respondent received were sufficiently severe to rise to the level of persecution, particularly since she was unaware of one of them before she departed. *See Matter of V-F-D-*, 23 I&N Dec. at 863.

We are unpersuaded by the respondent's argument that the threat that she received was sufficiently severe to constitute past persecution because she was aware of others who had received such threats and what had happened to them. As explained above, the Immigration Judge reasonably considered the threatening phone call that the respondent received and the note that was left at her home in concluding that these acts were not sufficiently severe to rise to the level of persecution. The Immigration Judge was not required to interpret the evidence in the manner the respondent advocated. *See Don v. Gonzales*, 476 F.3d 738, 744 (9th Cir. 2007).

The respondent argues that the Immigration Judge erred in not considering that she was also watched by gang members while in El Salvador. Although the respondent testified that young men observed her, she did not know why and has not shown any connection to the threats she received. Further, assuming arguendo that this was considered as part of the Immigration Judge's analysis whether the respondent's past experiences rise to the level of persecution, we are unpersuaded that remand for further consideration of this testimony would alter the outcome of the Immigration Judge's determination in this regard. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (stating that we may remand proceedings if additional fact-finding is needed); *see also Matter of Coelho*, 20 I&N Dec. 464, 473 (BIA 1992).

The respondent's assertion that the Immigration Judge erred by not considering that gang members came to her home searching for her after she left El Salvador does not relate to past persecution. Further, the record reflects that the respondent did not know if the men who inquired about her are part of the group that threatened her. Her claim that the threat she received deprived her of liberty and the ability to practice her religion at church and caused her severe economic deprivation is unpersuasive.[17]

---

[17] We recognize that the inability to practice one's religion may constitute persecution, but to the extent that the alleged harm here related to the respondent's religion, it does not rise

The record does not support a conclusion that the sole threat the respondent claimed she received and the one she was unaware of before her departure were sufficiently severe to rise to the level of persecution. Since she has not established that she suffered past persecution, she does not have a rebuttable presumption of a well-founded fear of persecution upon return. 8 C.F.R. § 1208.13(b)(1) (2020).

In considering whether the respondent has established a well-founded fear of persecution, we affirm the Immigration Judge's determination that she has not met her burden to establish that authorities of the Salvadoran Government are unable or unwilling to control the private actors she fears. *See Melkonian v. Ashcroft*, 320 F.3d 1061, 1064–65 (9th Cir. 2003) ("Eligibility for asylum based on a well-founded fear of future persecution requires [applicants] to . . . credibly testif[y] that they genuinely fear persecution by their government, or forces their government is unable or unwilling to control . . . ."); *see also Matter of A-B-*, 27 I&N Dec. 316, 337 (A.G. 2018) (stating that for an applicant to prevail on an asylum claim based on the violent conduct of a private actor, she "must show more than 'difficulty . . . controlling' private behavior" (citations omitted)), *abrogated on other grounds by Grace v. Whitaker*, 344 F. Supp. 3d 96, 127 (D.D.C. 2018), *appeal docketed sub nom. Grace v. Barr*, No. 19-5013 (D.C. Cir. Jan. 30, 2019).[18]

---

to that level. *See Nagoulko v. INS*, 333 F.3d 1012, 1016 (9th Cir. 2003) (finding no past persecution where although the alien's "religious practice and work was not free from interruption or harassment, she was not prevented from practicing her religion"). *See generally Guo v. Sessions*, 897 F.3d 1208, 1215 (9th Cir. 2018) ("In evaluating religious persecution claims, we have previously focused on how substantially the government (or other individuals that it was unable or unwilling to control) have restrained a petitioner's practice of his or her religion.").

[18] We recognize that *Matter of A-B-* was abrogated by the United States District Court for the District of Columbia in *Grace v. Whitaker*. However, we are not bound by a published decision of a Federal district court, even in cases arising in the same district, unless it relates to the parties involved in the case. *See Matter of Robles*, 24 I&N Dec. 22, 28 (BIA 2006); *Matter of K-S-*, 20 I&N Dec. 715, 718–19 (BIA 1993). In addition, an appeal of the district court's decision in *Grace* is currently pending. *See Matter of L-E-A-*, 27 I&N Dec. 581, 589 n.1 (A.G. 2019). In any case, the injunction in *Grace* only relates to credible fear determinations in expedited removal proceedings and does not govern asylum and withholding of removal claims, which are at issue in this case. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 227–28 (5th Cir. 2019). *But see Juan Antonio v. Barr*, 959 F.3d 778, 790 n.3, 792 (6th Cir. 2020) (finding the reasoning in *Grace* persuasive and remanding for further proceedings as to the social group analysis). Moreover, we follow the decisions of the Attorney General unless they are reversed by circuit court authority. *See Matter of Jimenez-Santillano*, 21 I&N Dec. 567, 571 (BIA 1996); *see also Matter of E-L-H-*, 23 I&N Dec. 814, 815 (BIA 2005). We therefore consider our application of *Matter of A-B-* in this case to be appropriate.

Based on the foregoing, we agree with the Immigration Judge that the respondent has not met her burden to establish eligibility for asylum. 8 C.F.R. § 1208.13(a).  Since the respondent has not satisfied the burden of proof required for asylum, it follows that she has not satisfied the higher standard of proof required for withholding of removal.  *See* 8 C.F.R. § 1208.16(b) (2020); *see also Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000).  Given our disposition of the appeal, we need not address the respondent's remaining arguments regarding her eligibility for asylum and withholding of removal.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam); *Matter of A-B-*, 27 I&N Dec. at 340.  Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $799 for each day the respondent is in violation.  *See* section 274D of the Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2020).